Authority. Ms. Mishra for the amicus curiae, Mr. Shintella for the appellate. Good morning. May it please the court, my name is Dina Mishra and I am court-appointed amicus curiae supporting appellants. If I may, I'll reserve two minutes for rebuttal. The district court erred in dismissing this case on standing and mootness grounds because it overlooked the Hardaway's sufficient allegations of injury in their complaint and TRO motion filed the same day. So your point is the district court had to look beyond the complaint? Yes, that's one of our arguments, Your Honor. Was it obligated to do so? Yes, under Brown and Abdel Fattah and what follows naturally from those cases. That TRO motion specifically alleged that after move-in, defendant DCHA opted to... I'm sorry, that surprises me. I would have thought that your strongest argument would be for us to confine ourselves to the complaint because you have an allegation of injury, your allegation of injury, dispute about that from the defendant and then we have the district court treating as if it's summary judgment and not doing it on the pleadings. But maybe I've thought incorrectly. Your Honor, to clarify, we believe the TRO motion is effectively an extension of the complaint and the reason why is it was filed the same day, it has many overlapping allegations, the complaint has an attachment that also is to be considered, this doctor's report, and so we actually believe as a package it must be considered as part of the complaint. You wouldn't mind adopting Judge Griffith's approach, would you? Well, we'd like to confine it to the complaint and not look beyond the complaint because we believe that that's what's necessary at this motion to dismiss stage without... I mean, the complaint doesn't say and I incorporate hereby my request for temporary relief. Even if the TRO motion is not considered and it has only more specificity about allegations that are already in the complaint. So, for instance, the complaint says that they made requests that included live-in aid and housing voucher requests and that there was a refusal of all reasonable accommodation requests. What the TRO says, just more specifically, is that... Wait, wait, before you go there, why do you... I understand why you want to rely on the TRO because it's clear. But isn't there enough in the complaint by itself? Yes, Your Honor. Because if all the complaint says, which is what DC says it says, that they denied permission for live-in aid, then under the conditions, she's not entitled to a two-bedroom apartment, right? That's correct, Your Honor. Okay, so why isn't... In other words, are you arguing the TRO because you doubt that the complaint is sufficient? No, Your Honor. It's simply because the TRO motion has such great quotes that I haven't even been able to get to. And if I can say them... No, but you understand our concern. Absolutely, Your Honor. All right? The district court has a doesn't matter. The district court is busy. Hundreds of motions are filed every day. Looking at the complaint, there's a motion before him to dismiss. And you've had three judges ask you now, and I think you have acknowledged the complaint is sufficient. Absolutely, Your 12-14, yes, Your Honor. 12-14, all right. The TRO motion, as I said, only says in more specific detail that they were taking back the two-unit voucher and forcing her into a one-unit voucher, forcing her to find a new apartment. But as we discussed, the complaint already says refused all reasonable accommodation requests, and the district court understood that to be both the live-in aid and the housing voucher requests. That's sufficient at that point for the financial injuries that she alleged that support standing here. So the quote, out-of-pocket losses, quote, attorney fees, all of that appears in the complaint, and that's sufficient, Your Honors. The district court here also erred in relying on these post-case commencement documents for standing and mootness. That was wrong under Neal v. Kelly because the court only told these pro se plaintiffs that it would rule on the dismissal motion by considering their complaint and motion opposition, not that it would consider or that they should submit other evidence. Anyway, DCHA did not meet its, quote, heavy burden of proof for mootness by purported involuntary cessation. No later document absent the settlement would moot the damages claims in this case, and the documents, in fact, show the injuries are ongoing. I'd be happy to answer any questions directed to any of the specific documents. The district argues that, I'll ask the district about this when they're up here, but they say the later letter, the September letter, that she's been allowed to keep the two-bedroom apartment through, quote, administrative grace, right? That's not how we would say that the September letter should be read in light of the complaint allegation. Yeah, I totally understand that's not your view, but they say, look, there's no problem here because we've let her stay there. Correct. That's as I understand their argument as well. Well, if she's not disabled, can they legally allow her to stay there? There are... Are there HUD regulations? They can't, right? So Lena, as the live-in aid, absolutely the only basis is if she's granted firm approval as a live-in aid, and that was firmly denied in the September letter. Angeline, as the tenant, there are some other grounds listed, but those don't apply on this matter. But not to have a two-bedroom apartment. I'm just asking the question about, talking about mootness. In other words, they say it's moot because, but let me ask you, there's a phrase in your brief that I want to ask you about. You say, at page 41 of your brief, you say that under federal regulations, a tenant is not entitled to have an unapproved live-in The district says this is moot because we've allowed her to live there, and I assume what you mean by this is, well, that's really nice, but legally you can't even do that, right? Correct, Your Honor. On this record, yes. I just have one more question about your motion to seal our briefs here, the appellate briefs and the appendix. I wasn't sure why we, I understand your argument about the record and the form that has information about her disability, but in terms of our briefs, aren't all the, isn't anything that's detailed about plaintiff's disability redacted already? Yes. So why do we need to seal the briefs? To clarify, the redaction was only ordered as a part of an order that deferred the actual ruling ultimately on the appellate seal. So we keep the redaction in place, you're satisfied? That is what we've asked for in the reply on that motion, yes. Okay, fine. Great. Okay. That's all I had. Thank you. I'd be happy to. I just want to go back to the point Judge Tatel was exploring with you. Sure. You, and I'll ask counsel for the agency, because I'm not sure I understand counsel's status here. I understood them to say that under the DC program, essentially, since the Montgomery decision, Montgomery County decision is portable. DC's willing to recognize it. And in fact, according to what's alleged in the complaint, your client has received everything that she has sought. And so you argue strenuously against the agency's interpretation. And Judge Tatel was exploring with you your argument on page 41. And I was concerned about that as well. What hasn't she obtained? And is it in the record? Yes, Your Honor. So there are a number of things she hasn't obtained. For one, this court can take judicial notice of all of the regulations that have legal consequences that follow that cause her the injuries. Denying the live in aid status, that live in aid approval, means that there's no right for Lena to be in the apartment. Even if the agency says she has that right? So in other words, the agency interpretation here is saying that your client has asked for A, B, and C. We agree she's entitled to it. End of discussion. Why isn't the district bound by that concession? So we understand the district to be disputing about the live in aid status. But what we've pointed out is that the regulations require that approval. And that approval was firmly denied both in the July letter and also in the September letter. And so the district says, I just need to understand your position here. You were arguing against your client. The district says, or this agency says, essentially forget those letters. We're happy to let her sister live with her and act as her aid in a two bedroom apartment that we've already identified and approved. So if it's not approval, it doesn't meet 24 CFR? No. I'm saying the District of Columbia is interpreting its authority to allow this to happen. And so far as I know, you've just cited the regulation. And the district said, this is our interpretation of the regulation. Now maybe they're wrong, maybe they're right. But that's what you want, isn't it? Two points, Your Honor. First, it's a federal regulation, not one that the agency, which isn't even the D.C. government, has any authority to interpret. Have you cited anything that bars the district from doing this beyond this regulation? So we didn't understand the district to be doing exactly what you described. We understood them to be just disputing whether approval is what's required by that regulation, which is a question of federal interpretation for this court. In other words, I could understand the argument if, in fact, there's some programs she's not receiving, there's some services she's not receiving. But the way I read Appellee's Brief, she's receiving everything she asked for. And ignore for the moment the TRO, and we're just talking about the complaint. Sure. So two points, Your Honor. The limited approval, even to qualify under the D.C. regulations, would need to be in a particular form. So what's happened thus far doesn't meet that procedural form. And you can look to D.C. Municipal Regulations, Title 14. What is the form? The form, it needs to not only be in writing, but also in any form that the plaintiff requests. All right. That hasn't happened yet. That hasn't happened yet. Well, you've got this letter saying it's okay for this sister to live there in this two-bedroom apartment. Right. But in addition, Your Honor, there's also the problem of the two-bedroom housing voucher. And when you deny approval for the live-in aid, the two-bedroom housing voucher under the regulations necessarily falls as well. No. Counsel, we get cases all the time where a statute says something, a regulation says something, and the agency interprets it in a manner. And you're saying that the District of Columbia could not lawfully interpret this regulation in the manner it has. And I thought that was the thrust of Judge Tatel's question to you. It has no authority to get deference for that interpretation. It's just like any other party litigant in this court. The reason is because those are not actually its regulations. It's not the agency that issues them. They're federal regulations. But you just read me their own regulations. That's D.C.'s regulation, the D.C. government. This is an independent authority of the D.C. government. You know, suits against it don't even lie against the D.C. government for damages. This is not the agency that's tasked with anything that should resemble getting deference in this case. So who pays the judgment against the agency? My understanding is that it lies against D.C.H.A. At least D.C. code says that damages liability is not against the D.C. government. D.C. taxpayer? I do not know, Your Honor. But all I know is what I can tell you from seeing that legislation. But I'd like to also point out that, as we said, the two-bedroom housing voucher falls as a matter of federal regulations, which D.C. or any of D.C.'s agencies clearly have no authority to interpret. I didn't see all that in your brief. That's all I'm getting at. I don't want to extend this too far. But the point is, who knows? Somewhere buried in those federal regulations is some authorization for the local housing authority to do certain things. And maybe D.C.'s acting under that. I don't know. Why don't you save the rest of your time for rebuttal? I will, Your Honor. I'd just like to say, though, that they haven't raised it yet. Haven't raised what? They haven't raised any regulations that counteract this. And that's something that they would have potentially forfeited by this point. I don't have any more questions. Oh, you have some questions? No, no, no. Okay. I'd be happy to answer any further. All right. Thank you. Good morning. Good morning. May I please support Alex Gentile for the District of Columbia Housing Authority? Do you know offhand the answer to my question, who pays damages against the D.C. Housing Authority? Yes, Your Honor. That's what I was going to start with. Thank you. The D.C. Housing Authority is an independent authority of the District of Columbia government. It's funded primarily by HUD. Also, certain programs are funded by the District of Columbia government. Who pays the judgments? It would be the District of Columbia Housing Authority. That's right. The D.C. taxpayer. All right. So why don't you get to the other questions that the court had? Why isn't the complaint sufficient? The complaint is deficient, Your Honor, because it doesn't allege an injury. If we look at what's in the complaint, there's no injury alleged with respect to the Hardaway's ability to obtain the housing that they need. She alleges. Well, let's get the doctrine straight, first of all, because I don't think the district court completely understood it. Do you agree that the question of standing is determined at the time of the filing of the complaint? Right? Well, Your Honor, yes, I believe that is the case. Okay. And at the time the complaint was filed here, she had just received the July 9 letter. Correct? Yes, Your Honor. That's correct. Okay. And the July 9 letter, I mean, if you look at the TRO, it's very clear what the July 9 letter says. But the July 9 letter says it revokes the live-in aid permission. Correct? Well, Your Honor, it doesn't actually say that. It doesn't? And I'm looking at page, the joint appendix. This is page 20. What it says is that there's a denial of a participant request for a reasonable accommodation. Well, isn't that what the live-in aid is? The live-in aid and the two-bedroom. Remember, this is a complaint, a pro se complaint. We interpret it in the light most favorable to the appointive. Yes, Your Honor, of course. Okay. So she's saying her permission for a live-in aid was denied. And under federal law, that means she's not entitled to a two-bedroom voucher. Well, at that point, Your Honor, yes. Isn't it just the end of the standing issue, isn't it? I'm sorry, Your Honor? Why is the standing issue any more complicated than that? Well, as a result of the motion that DCHA filed for mootness on a 12B1 motion... But now you're relying on the September letter, correct? Yes, Your Honor. Okay. That has nothing to do with the situation that existed at the time the complaint was filed. Well, it's not... This is why I said it looks to me, and maybe I'm wrong about this, that the district court and now you have gotten standing and mootness mixed up. The question is, did the plaintiff have standing? And our case law and the Supreme Court case law says that's determined at the time the complaint is filed. That's question number one. Then the second constitutional jurisdiction question is mootness. And that turns on whether or not something after the filing of the complaint rendered the case moot. Now, is that wrong? No, Your Honor. That's correct. Okay. So the September letter has nothing to do... Actually, the September letter maybe does have something to do with your interpretation of the complaint because it reaffirms the denial of her two-bedroom voucher, right? That's what it says. Yes, Your Honor. So that means the allegation in the complaint that, in effect, it denied a two-bedroom voucher must be totally accurate. So the question then is, is there anything in the September letter, right, that renders the case moot? Because that can't relate to standing. Do you agree with that? Well, mootness is a standing question, Your Honor. Mootness is not a standing question. Mootness is a jurisdictional question. Yes, Your Honor. It's a jurisdictional question. Okay. But do you agree with me that the September letter relates only to mootness and not to standing? As of the time the complaint was filed, yes, Your Honor. Well, okay. So now, all right. And so your only argument then, with respect to standing, is that you don't believe we can interpret the complaint to sufficiently allege the denial of this benefit, right? That's your argument. The argument, yes, Your Honor. Okay. And if we don't agree with that, then she has standing, correct? That's correct. If the court determined... What? I'm sorry, Your Honor. Please. I was going to say that if the court determined that the case was not, in fact, moot, then yes. Well, no. Now I want to take you on the mootness. Okay? Okay. Okay. So what is it about the September letter that renders this moot? Well, the September letter says that although the plaintiffs have not provided the information necessary to support Angeline's request for a reasonable accommodation, that they would nevertheless continue paying the two-bedroom housing assistance payments as that determination had already been made by the Housing Choice Manager Program. But D.C. is not legally obligated to allow her live-in aid to be there, correct? It's done by grace, by administrative grace. Is that what you called it? Your Honor, the ADA 504 office at D.C.H.A. has an appeals process, and they're able to revisit the decisions. Wait, wait, wait. Yeah, but I was asking a different question. My question was, could D.C. Housing Authority tomorrow change its mind with respect to allowing the live-in aid to be in the apartment? I'm not sure what the regulatory basis for that would be. But D.C. has revoked her live-in aid permission, but said will nevertheless allow her to stay there. The word revoked does not actually appear anywhere in D.C.H.A.'s communications with plaintiffs. It doesn't appear in the complaint. There's no allegation that at any time the housing assistance payments for a two-bedroom voucher were terminated or reduced. No, that's not my question. My question is, the, here, the, okay, the, okay, the September 26th letter says... It's been denied. The D.C. was again denying the request for live-in aid because there was no documentation. That's correct. Okay, so they've denied the request for live-in aid, but they say you can stay there anyway, correct? That's correct. Okay, but the point is that D.C. is not legally obligated to continue that. It could change it tomorrow because it's said there's no documentation to support it. In fact, to get back to the question that Judge Rogers and I were asking, I don't see, I mean, I think the argument for mootness, for the absence of mootness is even stronger because as I read these regulations, what the D.C. government is doing is actually illegal. In other words, having revoked her live-in aid certification or whatever you call it, the regulations seem to say, well, not seem, here, let me read it to you. An HCVP tenant is not entitled to have an unapproved live-in aid reside in the unit. Oh, I'm sorry. That was a quote from the brief. Let me try this. Here. I'm sorry. Unless an approved live-in aid resides with the family, the family unit size for any family consisting of a single person must be either 0 or 1. I don't know who writes these regulations, but it's awfully clear. It must be either 0 or 1. Lawyers. That's what the regulation says. Yes, Your Honor, that's correct. So, in other words, the reason this case is not moot, and this is a question, isn't the reason this case is not moot is that D.C. is under no legal, not only is D.C. under no legal obligation to continue allowing the aide to live there and to permit the plaintiff to have a two-bedroom apartment, but it seems to me that actually if D.C. lawyers look at this, they say, wait a minute, this administrative grace is illegal. We can't do it. She's either got to be properly certified to need an aide or the aide can't be there and the plaintiff has to be in a one-bedroom. So the case is not moot under those circumstances. Well, I disagree, Your Honor. Tell me why. Because I believe the September 26th letter should be read as an approval of the live-in aid. In that letter they say the ADA 504 office at D.C.H.A. says, although you've not provided the information we've denied your request, we will nevertheless not overturn the prior decision to grant you a two-bedroom voucher. That has already been made. The letter goes on and say, so you think that this letter is legally binding? They say, I can see how you get there. They say, it says, it says we're denying it because there's no records. We contacted Dr. Lother, and the doctor stated that she's able to perform basic steps of normal living. Yes. See, what we don't know in this case, all right, can I just, because I think we've got to be clear here, the District of Columbia has all kinds of funds, all right, that enable people who can't necessarily afford to pay the full amount to live in various places, discretionary funds, et cetera. We don't know if that's what's happening here or not based on this letter, all right? And just to follow up quickly on Judge Tatel's point, you know, a new administration comes in, and what happens? Is she out on the street, or does she have to move to a one-bedroom apartment? And you're suggesting, and that's why I was interested in your status here too, can you represent on behalf of the District of Columbia so they would be legally bound to continue for her foreseeable lifetime to allow her to have a decent, safe, and sanitary two-bedroom apartment in which her sister may live? Or if her sister dies, someone else may live as a live-in aide. I mean, that's what's unclear here. And you're sort of arguing it's moot because nothing will change from her circumstances. There are two parts to the answer to that question, Your Honor. The first is no, I cannot make that representation. I'm not from the District of Columbia government because I don't represent them. The second answer to that question is that the housing authority. Can you make it on behalf of the housing authority? I can. The housing authority program that's at issue in this case is a federal program. The District of Columbia government has no say over who participates or who is a beneficiary of that program. I don't understand that at all. The HCVP is funded totally by federal dollars. But you just told me the D.C. government is going to, D.C. taxpayer is going to pay the judgment. No, no, no. You just told me that. No, I said D.C. I'm sorry, Your Honor, I said D.C.H.A. The District of Columbia housing authority would pay it. They don't have a judgment fund. They do have funds, Your Honor. They do have funds. They have funds that come from the federal government to administer the various federal programs, and they have funds that come from the District of Columbia to administer the District of Columbia-sponsored programs. They do both. I understand administrative funds. I was talking about judgment funds, two different animals. In any event, you say you cannot make this representation on behalf of the district government. So if a judgment is entered against the D.C. housing authority, we have no idea what the district government's position would be as to paying that judgment. Well, the District of Columbia has no obligation to pay judgments against the District of Columbia housing authority. I'd like to see some authority for that one. Can I take you back to your first answer to Judge Rogers' question? Sure. So you're representing to us here that this September 26 letter, that that is in fact not a revocation of her litany permission or of her two-bedroom apartment voucher? I will concede, Your Honor, that the letter is perhaps inarticulately written. While it certainly says that the request for reasonable accommodation is denied, the ultimate conclusion of the letter is that the Housing Choice Voucher Program, that's a federal program, a federally funded program, will continue to provide those. So look to what we do and not what we say? Well, Your Honor, it does say in the letter what's going to happen, and that's what I would ask the court to do. It's the final conclusion, the final conclusion of what the Housing Choice Voucher Program is. Why isn't the best way to read it, given the way the letter is written, why isn't the best way to read this that this is an act of administrative grace? And if that's the case, that's not what they're entitled to. That's why the injury is ongoing, because they're not assured that they'll be able to have, that she's not assured that she'll be able to have this housing. Why isn't that the best way to read this troublesome letter? Because that's not the ultimate conclusion that the letter comes to. So what if HUD does an audit and decides that these funds are being improperly paid? What happens then to these plaintiffs? I can't answer that question, Your Honor. I know, because you can't speak on behalf of the district government, and you cannot speak on behalf of the federal government either. Right. All you can do, as I understand it, is interpret, on behalf of this agency, what they meant in their letter. But you're not able to assure us that neither the federal government nor the district government will dispute this interpretation. Well, the district government would have no basis to dispute it, Your Honor, but I cannot make that representation on behalf of HUD. When the judgment comes in, all right, are they going to pay it, or are they going to say, look, you've been audited by HUD, and you have no authority to do this? I think this is very complicated, and we're talking about a complaint where allegations are made and a dismissal with prejudice. And if you could make all these commitments, that would be one thing, but how can you? Well, Your Honor, I would simply point out that the letter does endeavor to make that commitment, and that's why we believe it. Would you agree with us that, and I appreciate very much your effort to try to interpret this letter with us, but would you agree with us that if we believe we are limited by the language of the letter, that if we think that the letter can only be interpreted as a revocation of her permission to have a live-in aide but a decision to allow her to keep it anyway, that if we read it that way, the case is not moot because it could be changed any time, correct? Even in that circumstance, Your Honor, I'm not sure what, I think the injury in that case would be not concrete in the sense that it's speculative. No, no, no, wait, wait, we've resolved standing. This is a mootness question. What makes the case moot? In other words, if she's living there via, pursuant to the D.C. government's administrative grace, you know, they're being nice, they're letting her stay there. Isn't she still being injured because her position is that she's legally entitled to a two-bedroom voucher, which she can't have until the district reinstates her permit to have a live-in aide, right? The only way I can answer that question, Your Honor, is to say I believe that's what the letter does. Okay, one last question. Can you give us any reason why we don't have to set aside the district court's refusal to seal the administrative record? I'm sorry, with respect to the district court's decision? Yeah. I don't believe there was anything prejudicial about it in this case. There was no medical document that was submitted. I mean, certainly if there was. Well, that's what he found. But what about there's a form in the record called Health Providers Verification of Need for a Reasonable Accommodation. It's at A1718, and it contains a detailed description of the plaintiff's doctor of her disability, and it explains a need for why isn't that a medical record? I'm sorry, Your Honor. We're referring to the medical form that was attached to the complaint. I found it in the record. Okay. A1718. Okay. Well, Your Honor, my understanding is that there were no medical records. Well, let's assume that that's in the record and it's there. Well, in that circumstance, then I think that individual record would need to be redacted. Yeah. There's no prejudice to the district for redacting. No, there's no prejudice to the district for redacting medical information. That's what I thought. Okay, great. Thank you. There's nothing further. Thank you. Thank you. Counsel for appellant. I have three brief points, Your Honor. The first is the question is whether she got all that she asked. She certainly didn't. We could talk about that. But even if she had, if there's any period during which she lacked it, which is what the question is for standing, and I think it's unequivocal now that that is true, she had damages claims that prevent this case from becoming moot. So at bottom, that has to be what allows this case to proceed and to avoid dismissal. But even beyond that, even if, as Judge Rogers had sort of described, DCHA was saying something more about the HOC voucher carrying over, in our brief at pages 34 to 36 and note 2, we explain how that would still be injury because that voucher would pay less than the DC voucher that she sought that was issued on June 6th, and that was, quote, taken back, as the TRO motion says, or in the words of the complaint, refused all reasonable accommodation requests, which included, according to the district court itself, requests for both a living aid and the two-bedroom housing voucher. I think another point that needs to be recognized on the September 26th letter is that this court really can't understand it the way that DCHA is alleging. The first thing is that on its face it says your request for a living aid has been denied. The second thing is that it is responding to a request of July 11th, 2013, which is actually a subsequent date to the request described in the complaint. So it's actually a new denial of the living aid request. There can't be any other way to understand that language to do anything other than deny living aid approval. More importantly, even if they said that the HCVP would continue to give the two-bedroom voucher, that wouldn't change the fact that Lena Hardaway, as the living aid, would not be able to live in whatever size apartment might be granted. So it's entirely beside the point what the size of the voucher would be for purposes of the living aid harms. But in terms of the two-bedroom housing vouchers we've described, the regulations mean that the two-bedroom housing voucher cannot follow once the living aid approval has been denied. Also, the standards here being a motion to dismiss, or even if it were summary judgment, the letter would have to be read in favor of the plaintiffs, and they weren't informed they could put in evidence. You've been appointed by the court to represent the appellants, and we thank you for your service. Thank you so much, Your Honor. All right. Take the case under advisory.
judges: Rogers, Tatel, Griffith